UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Niazi Licensing Corporation, | Case No. 17-cv-5094 (WMW/BRT) |
| Plaintiff, | |
| v. | **ORDER** |
| Boston Scientific Corp., | |
| Defendant. | |

| | |
|---|---|
| Niazi Licensing Corporation, | Case No. 17-cv-5096 (WMW/BRT) |
| Plaintiff, | |
| v. | **ORDER** |
| St. Jude Medical S.C., Inc., | |
| Defendant. | |

Plaintiff Niazi Licensing Corporation (Niazi) commenced these patent-infringement actions against Defendants Boston Scientific Corp. (Boston Scientific) and St. Jude Medical S.C., Inc. (St. Jude), alleging that Defendants have infringed claims in United States Patent No. 6,638,268 (the '268 Patent), titled "Catheter to Cannulate the Coronary Sinus." Pending before the Court are St. Jude's motion to strike Niazi's infringement contentions, Boston Scientific's motion to exclude evidence, and the parties' requests for the construction of disputed claim terms in the '268 Patent. (Case No. 17-cv-5094, Dkts. 56, 83; Case No. 17-cv-5096, Dkts. 67, 78.) For the reasons addressed below, the Court

denies the motion to strike and the motion to exclude evidence and resolves the claim construction disputes as described herein.

## BACKGROUND

Niazi, a Washington corporation with its principal place of business in Wisconsin, owns the '268 Patent at issue here. Both Boston Scientific and St. Jude manufacture and sell medical devices. Boston Scientific is a Delaware corporation with its principal place of business in Massachusetts. St. Jude is a Minnesota corporation with its principal place of business in Texas.

The '268 Patent, issued on October 28, 2003, pertains to a catheter system that can be inserted into the coronary sinus of the heart. This catheter system allows medical professionals to administer fluids and introduce pacing leads to the coronary sinus. Although the use of catheters in general was well established by 2003, the '268 Patent describes an invention that, based on its structure and shape, purportedly is better suited for "use in the coronary sinus, especially in patients suffering from congestive heart failure." As relevant here, the '268 Patent claims a double catheter system with an "outer, resilient catheter having shape memory and a hook shaped distal end" and an "inner, pliable catheter slidably disposed in the outer catheter." The '268 Patent also claims methods of using the catheter system.

Niazi initiated these patent-infringement lawsuits against Boston Scientific and St. Jude on November 13, 2017. Niazi alleges that both Boston Scientific and St. Jude have infringed—either literally or through the doctrine of equivalents—the '268 Patent. Niazi alleges that Boston Scientific and St. Jude have directly infringed the '268 Patent by

2

using, manufacturing, selling, or offering to sell infringing catheter systems. Niazi also alleges that both Defendants have indirectly infringed the '268 Patent by inducing its customers—namely, medical professionals—to infringe the '268 Patent.

The '268 Patent includes 27 claims, some of which are directed to configurations of the catheters and others that are directed to the method of using the catheter system. Niazi alleges that Boston Scientific infringes 11 claims in the '268 Patent: independent Claims 1, 11, 13, 18, and 24 and dependent Claims 10, 14, 19, 23, 25, and 26. Niazi also alleges that St. Jude infringes those same claims, as well as dependent Claims 15 and 27.

## ANALYSIS

Before the Court are St. Jude's motion to strike Niazi's infringement contentions, Boston Scientific's motion to exclude evidence, and the parties' requests for claim construction. The Court addresses each, in turn.

### I. St. Jude's Motion to Strike

Pursuant to Local Rule 26.1 and the February 22, 2019 Scheduling Order, (Case No. 17-cv-5096, Dkt. 65), Niazi submitted infringement contentions in advance of the claim-construction hearing. St. Jude moves to strike these infringement contentions, arguing that Niazi fails to identify an act of direct or indirect infringement.[1]

---

[1] St. Jude also alleges that Niazi is arbitrarily applying claim language to force infringement. Specifically, St. Jude argues that the word "bend" in the '268 Patent is indefinite. An argument of this nature—that a term is indefinite—is an argument for claim construction. *See Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012). The Court's claim-construction analysis is in Part II of this Order.

A motion to strike generally is brought under Rule 12(f), Fed. R. Civ. P., which provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Here, St. Jude is not moving to strike *pleadings*, but rather infringement contentions. In support of its motion, St. Jude relies on Federal Rules of Civil Procedure 16(f) and 41. When a party "fails to obey a scheduling or other pretrial order," a district court may issue sanctions. Fed. R. Civ. P. 16(f); *accord O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) (holding that a federal district court "may impose any just sanction for the failure to obey a scheduling order" (internal quotation marks omitted)). Similarly, when a plaintiff fails to comply with the Federal Rules of Civil Procedure or a court order, "a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).

St. Jude contends that Niazi's infringement contentions violate the February 22, 2019 Scheduling Order. St. Jude does not argue that Niazi's infringement contentions are untimely, but instead argues that the infringement contentions are *substantively* deficient. Nothing in Rule 16(f), Rule 41(b), or any case to which St. Jude cites contemplates that such a deficiency is a violation of a *scheduling* order. Moreover, the authority on which St. Jude relies provides, at most, that a district court has the *discretion* to impose sanctions if it determines that the infringement contentions violate a court order. Under the circumstances presented here, the Court declines to strike Niazi's allegedly deficient infringement contentions.

Accordingly, St. Jude's motion to strike is denied.

## II. Claim Construction

Niazi alleges that St. Jude and Boston Scientific have infringed the '268 Patent. The parties request construction of 21 terms or phrases that are found within the claims at issue.

A patent is infringed by "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). Courts employ a two-step analysis when making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, the court must construe the asserted claims of the patent to ascertain their meaning and scope. *See id.* Second, the fact finder must compare the construed claims with the accused product. *See id.* at 976. Only the first step of this analysis—claim construction—presently is at issue.

A district court's duty when performing claim construction is "to resolve a dispute about claim scope that has been raised by the parties." *Eon Corp. IP Holdings v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). This duty resides with the court because "the ultimate question of construction [is] a legal question." *Id.* at 1318 (alternation in original) (quoting *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 842 (2015)).

It also is appropriate at this stage for a district court to determine whether a disputed claim complies with the definiteness requirement of Title 35, United States Code, Section 112(b). *See Noah Sys.*, 675 F.3d at 1311 (holding that a determination of indefiniteness is "a matter of claim construction"). Section 112(b) provides that patent claims must "particularly point[ ] out and distinctly claim[ ] the subject matter which the inventor . . .

5

regards as the invention." 35 U.S.C. § 112(b). A party asserting that a claim is indefinite must show by clear and convincing evidence that the claim is indefinite. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). An indefiniteness ruling renders a claim invalid as a matter of law. *See, e.g.*, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 906 (2014); *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 249 F. App'x 184, 186 (Fed. Cir. 2007).

When engaging in claim construction, a district court must construe the claims "independent of the accused product, in light of the specification, the prosecution history, and the prior art." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (per curiam) (internal quotation marks omitted). Although it is appropriate for a court to consider the accused device when determining *which* aspects of the patent claim should be construed, the claim itself "is construed in the light of the claim language . . . *not* in light of the accused device." *Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1309 n.10 (Fed. Cir. 2006) (internal quotation marks omitted). Claim construction merely elaborates the normally terse claim language "in order to understand and explain, but not to change, the scope of the claims." *Embrex*, 216 F.3d at 1347 (internal quotation marks omitted).

A district court's claim-construction analysis begins by focusing on the words of the claims. "It is a bedrock principle of patent law that the claims of the patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). A construction that gives meaning to all claim terms is preferred. *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). Because claim terms often are used "consistently

throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314. And the doctrine of claim differentiation creates a presumption that the use of different terms in a patent claim connotes that those terms should be ascribed different meanings. *See Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012).

Courts generally give the words in a patent claim their ordinary and customary meaning at the time of the invention. *Phillips*, 415 F.3d at 1313. The ordinary and customary meaning of a claim term is the meaning that would have been understood by a person of ordinary skill in the field of technology in question. *Id.* As the Federal Circuit has explained:

> It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention—the inventor's lexicography—must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decisionmaking process by reviewing the same resources as would that person, *viz.*, the patent specification and the prosecution history.

*Id.* (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words." *Id.* at 1314. Courts are mindful that "a sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems—especially easy ones . . . —is

7

properly left to the trier of fact." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).

The patent specification, the written description of the invention, must be "clear and complete enough to enable those of ordinary skill in the art to make and use" the invention. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The "specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted). When the specification indicates "a special definition given to a claim term by the patentee that differs from the meaning [the claim term] would otherwise possess," the inventor's lexicography governs. *Id.* at 1316. But a court may not import limitations from the written description into the claims. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998). For this reason, the disclosure of a particular embodiment of the claimed invention in the specification does not narrow the patent claims. *Id.* at 1347-48.

As with the specification, the patent's prosecution history may be used to understand the claim terms, but this history cannot enlarge, diminish, or vary the claim limitations. *Markman*, 52 F.3d at 980. Similarly, extrinsic evidence may be consulted when necessary to resolve an ambiguity that cannot be resolved by consulting the intrinsic evidence. *See Vitronics*, 90 F.3d at 1583. But extrinsic evidence cannot be used to vary or contradict the terms of the claims. *Markman*, 52 F.3d at 981.

With these legal standards in mind, the Court addresses the disputed claim terms.[2]

## A. Inner, Pliable Catheter

Independent Claims 1, 13, 18, and 24 of the '268 Patent contain the phrase "inner, pliable catheter." For example, Claim 1 recites:

> 1. A double catheter, comprising:
>
> . . .
>
> an **inner, pliable catheter** slidably disposed in the outer catheter and of greater length than the outer catheter so that a distal end portion of the inner catheter can be extended or retracted from a distal end opening of the outer catheter . . .

(Emphasis added.) St. Jude and Boston Scientific argue that the phrase "inner, pliable catheter" renders Claims 1, 13, 18, and 24, and the claims that depend on them, invalid as

---

[2] Boston Scientific moves to exclude two pieces of evidence with respect to the claim-construction proceedings: the Patent Trial and Appeal Board's Decision on Institution of *Inter Partes* Review in a related case involving Medtronic, Inc., and a declaration of Dr. Imran Niazi. Boston Scientific first argues that Dr. Niazi disclosed the evidence in an untimely manner. A party may not rely on evidence that was disclosed in an untimely manner unless the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Assuming without deciding that the evidence was untimely, the disclosure nonetheless is harmless. The record establishes that Boston Scientific was aware or should have been aware of the underlying substance of both pieces of evidence at the outset of claim-construction briefing. Boston Scientific also argues in favor of excluding Dr. Niazi's declaration, alleging that Dr. Niazi is a biased witness. Mindful that an inventor's testimony "as to the inventor's subjective intent is irrelevant to the issue of claim construction," *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008), the Court considers Dr. Niazi's declaration only to the extent that the declaration addresses the state of the art and other objective matters. Finally, Boston Scientific argues that Dr. Niazi's declaration is unsigned. But the record does not support this allegation. For these reasons, Boston Scientific's motion to exclude evidence is denied.

9

indefinite as a matter of law.[3] Niazi counters that this phrase is definite and proposes that this phrase be construed to mean "a catheter that is easily bent, flexible."

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. This legal standard arises from the requirement of public notice. "[A] patent must be precise enough to afford clear notice of what is claimed, thereby appris[ing] the public of what is still open" to the public. *Id.* at 909 (alteration in original) (internal quotation marks omitted). Failure to do so would create a "zone of uncertainty" that would discourage further innovation. *Id.* at 911 (internal quotation marks omitted).

Although a claim need not rise to the level of "absolute or mathematical precision," the claim must delineate "objective boundaries for those of skill in the art" when read in light of the specification and the prosecution history. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014). "Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).

The Court of Appeals for the Federal Circuit recently clarified the distinction between definite and indefinite terms. In *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, the Federal Circuit held that the term "visually negligible" was definite because the patent specification

---

[3] Alternatively, Boston Scientific contends that, if this phrase is amenable to construction, it should be construed as an "inner catheter that lacks braiding."

included a general design of a visually negligible indicator, two specific examples of such indicators, and objective requirements for one of skill in the art to measure negligibility. *See* 844 F.3d 1370, 1378 (Fed. Cir. 2017). In contrast, the Federal Circuit held the terms "aesthetically pleasing" and "in an unobtrusive manner that does not distract a user" to be indefinite because those terms turned on an individual's subjective opinion. *See id.* at 1378-79 (distinguishing the facts of *Sonix* from *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) and *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014)). Moreover, the respective patent specifications for those indefinite terms lacked detailed examples and did not provide objective factors on which a person of skill in the art could rely. *See id.*

Here, the disputed claim term, "inner, pliable catheter," does not provide a "meaningfully precise claim scope" on its face. *See Halliburton Energy*, 514 F.3d at 1251. As such, the Court looks to the specification to determine whether the '268 Patent establishes objective boundaries for this disputed term. The specification describes the inner catheter as being "made of a soft, pliable material such as silicone" and as "extremely flexible." Elsewhere, the specification states that the inner catheter "preferably ha[s] a predetermined shape and a *certain degree of stiff[n]ess* to maintain such shape during manipulation in the heart, *but still flexible enough to bend when required*." (Emphasis added.)

These descriptors do not establish objective boundaries as to the range of pliability being claimed. Instead, the specification creates a "zone of uncertainty." *See Nautilus*, 572 U.S. at 911. The inner catheter is both "extremely flexible" and preferably has "a

11

certain degree of stiff[n]ess." Although the specification includes an example—a silicone catheter that is 2.6 mm in outer diameter and 2.3 mm in inner diameter—this one example does not clarify the *scope* of what the '268 Patent claims as the "inner, pliable catheter."

Niazi maintains that "inner, pliable catheter" is a definite term, relying on *McCreary v. United States*, 35 Fed. Cl. 533, 556-57 (1996). Setting aside *McCreary*'s lack of precedential value, the reasoning applied in *McCreary* undermines Niazi's argument. In *McCreary*, the court construed the disputed term "flexible." After observing that the plain meaning of "flexible" is "pliable," the *McCreary* court concluded that the definition was "not particularly helpful because the dispute between the parties is over *how* flexible or pliable the [claimed invention] must be." *Id.* at 556. The court then considered the specification for further guidance and ultimately determined a construction of the term. Here, as in *McCreary*, the amount of pliability is at issue. But, for the reasons addressed above, the specification of the '268 Patent fails to provide objective boundaries or other sufficient guidance for the scope of the term.

The record contains clear and convincing evidence that the term "inner, pliable catheter" renders the claims in which it is found invalid as indefinite.

B. **Outer, Resilient Catheter and Resilient Tube**

Independent Claims 1, 13, 18, and 24 include the term "resilient" in the context of an "outer, resilient catheter" or a "resilient tube." For example, Claim 1 recites:

1. A double catheter, comprising:

an **outer, resilient catheter** having shape memory and a hood shaped distal end configured for cannulation of the coronary sinus with at least one curved bend . . .

12

(Emphasis added.) St. Jude and Boston Scientific argue that the term "resilient" also renders independent Claims 1, 13, 18, and 24, and their dependent claims, invalid as indefinite.[4] Niazi contends that the Court should give "resilient" its plain and ordinary meaning, namely, "able to return to its original shape when undistorted."

As with "pliable," the term "resilient" does not, on its face, provide clear notice of the scope of the claim. Because indefiniteness is determined by looking to the claims in light of the specification, the Court once again turns to the specification of the '268 Patent. *See Nautilus*, 572 U.S. at 901.

The specification explains that the outer catheter (or tube) is "relatively stiff," has a "braided design," and is "made of a braided silastic or similar material to allow torque control and stiffness." The specification then provides that the outer catheter "preferably ha[s] a predetermined shape and a certain degree of stiff[n]ess to maintain such shape during manipulation in the heart, but still flexible enough to bend when required." The specification fails to provide objective criteria for measuring resilience. And the example of a "braided silastic or similar material" does not provide meaningful notice to the public as to what the '268 Patent claims as the scope of its invention.

---

[4] Alternatively, Boston Scientific argues that, if the term "resilient" can be construed, it should be defined as "braided."

Accordingly, the record establishes by clear and convincing evidence that "resilient"—as used in the terms "outer, resilient catheter" and "resilient tube"—renders the claims in which it is found indefinite.[5]

In light of the Court's conclusions, "pliable" and "resilient" render Claims 1, 13, 18, and 24 invalid as indefinite. Because Claims 14, 15, 19, 23, 25, 26, and 27 depend on Claims 1, 13, 18, and 24, these dependent claims also are indefinite. *See Soverain Software LLC v. Newegg Inc.*, 728 F.3d 1332, 1335-36 (Fed. Cir. 2013) (per curiam) (explaining presumption that, unless parties specifically present a basis for distinguishing a dependent claim from its corresponding independent claim, the claims "rise or fall together"). Having determined that the claims are indefinite on the foregoing grounds, the Court need not address the merits of Defendants' remaining claim-construction arguments with respect to these claims. *See Noah Sys.*, 675 F.3d at 1307 n.3 (declining to reach the merits of party's alternative grounds for indefiniteness of claims).

### C. The Catheter

In light of the above analysis, only Claim 11 remains as asserted against St. Jude and Boston Scientific. The parties dispute the construction of the term "the catheter," as found in Claim 11, which provides:

---

[5] In support of its argument that "resilient" is a definite term, Niazi contends that this term has been used in other patents. *See, e.g.*, *Cablz, Inc. v. Chums, Inc.*, 708 F. App'x 1006, 1010 (Fed. Cir. 2017). That the term may be found in other patents, however, is not determinative here. The Court does not hold that the term "resilient" is indefinite *per se*. Rather, the '268 Patent does not contain clear, objective parameters that put the public on notice of what is being claimed as "resilient."

14

> A method for placing an electrical lead in a lateral branch of a coronary sinus vein using a double catheter including an outer catheter and an inner catheter slidably disposed inside the outer catheter, comprising:
> inserting **the catheter** into the coronary sinus;
>> advancing a guide wire through **the catheter** into a coronary sinus lateral branch vein;
>> advancing the inner catheter out of a front end opening of the outer catheter along the guide wire into the branch vein;
>> inserting the lead through the outer and inner catheters to a target location in the branch vein; and
>> withdrawing **the catheter** leaving the lead in the branch vein.

(Emphasis added.) St. Jude contends that the term "the catheter" renders Claim 11 invalid as indefinite because "the catheter" lacks an antecedent basis.[6] Niazi contends that "the catheter" means "the double catheter."

As addressed above, a patent claim must "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. A claim may be indefinite when one of its terms lacks an antecedent basis. *See* Manual of Patent Examining Procedure § 2173.05(e) (providing an example of indefiniteness if a claim refers to "the lever" without any earlier reference to a lever but acknowledging that the mere lack of an antecedent basis is not a *per se* basis for indefiniteness). And although an indefinite claim cannot stand, a court's adopted construction "need not always purge every shred of ambiguity." *Acumed LLC*, 483 F.3d at 806.

The term "the catheter" creates a degree of ambiguity within Claim 11. For example, because the preamble of Claim 11 discusses a double catheter with an outer catheter and an inner catheter, the reference to "*the* catheter" in Step 1 of Claim 11 arguably

---

[6] Boston Scientific does not argue that "the catheter" is indefinite.

may refer to the double, outer, or inner catheter. (Emphasis added.) But the Court does not consider disputed claim terms in isolation, *see Nautilus*, 572 U.S. at 901, and the remainder of Claim 11 is instructive. When Claim 11 refers to the double catheter's *component* parts in Steps 3 and 4, the claim specifies an *inner* catheter or an *outer* catheter. In this context, a person with ordinary skill in the art would understand that Claim 11's reference to "the catheter" describes the double catheter system.

Accordingly, the Court construes "the catheter" in Claim 11 to mean "the double catheter."

### D. Order of Method Steps

The parties also dispute whether the steps recited in Claim 11 must be performed in the order listed to constitute infringement. The parties agree that, logically, the first step *must* be "inserting the catheter into the coronary sinus" and the last step *must* be "withdrawing the catheter." But the parties dispute whether the guide wire must be advanced (Step 2) before the inner catheter is advanced (Step 3).

Generally, a method claim does not require a particular order to the recited steps. *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014). But when "the claim language, as a matter of logic or grammar, requires that the steps be performed in the order written, or the specification directly or implicitly requires an order of steps," the claim requires the recited order. *Id.* at 1398-99 (internal quotation marks omitted).

Step 3 of Claim 11 describes the act of "advancing the inner catheter out of a front end opening of the outer catheter *along the guide wire into the branch vein*." (Emphasis

16

added.) Logic dictates that the inner catheter can be advanced "along the guide wire into the branch vein" only if the guide wire has itself already been advanced through the outer catheter. Clearly, Step 3 of Claim 11 must be performed after Step 2.[7]

Because logic requires the steps of Claim 11 to be performed in the order listed, the Court concludes that Claim 11 is infringed only when the steps are performed in the order listed.

### ORDER

Based on the foregoing analysis and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant St. Jude Medical S.C., Inc.'s motion to strike, (Case No. 17-cv-5096, Dkt. 67), is **DENIED**.

2. Defendant Boston Scientific Corp.'s motion to exclude evidence, (Case No. 17-cv-5094, Dkt. 83), is **DENIED**.

3. The disputed claim terms of United States Patent No. 6,638,268 are construed as addressed herein.

Dated: October 21, 2019             s/Wilhelmina M. Wright
                                                             Wilhelmina M. Wright
                                                               United States District Judge

---

[7] Niazi advances no argument that Step 4, "inserting the lead through the outer and inner catheters to a target location in the branch vein," can be performed out of order.